Filed 3/20/15  In re R.C. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re R.C., a Person Coming Under the Juvenile Court Law. | H040963, H041312 (Santa Clara County Super. Ct. No. 1-13-JD21960) |
| SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND CHILDREN'S SERVICES, Plaintiff and Respondent, v. K.C., Defendant and Appellant. | |

K.C. (mother) appeals from the juvenile court's order denying her Welfare and Institutions Code section 388 petition requesting that R.C. (child) (born 2013) be placed with his maternal grandmother and the order terminating her parental rights.[1] Mother argues the juvenile court abused its discretion when it used incorrect legal standards to evaluate her section 388 petition. She also claims the juvenile court erred when it denied her request to present additional evidence at a full evidentiary hearing.

For the reasons set forth below, we affirm both orders. Mother failed to meet her burden to demonstrate the proposed change in placement would be in child's best

---

[1] Further unspecified statutory references are to the Welfare and Institutions Code.

interest. Additionally, the court did not err in denying her request for a further hearing on the matter.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 26, 2013, the Santa Clara County Department of Family and Children's Services (Department) filed a petition alleging child came within the provisions of section 300, subdivisions (b) (failure to protect) and (j) (abuse of a sibling).

Child tested positive for methamphetamines at birth. Mother admitted she had used drugs throughout her pregnancy but claimed she had last used drugs three days before child's birth. R.R., the alleged father, also had a substance abuse problem. The petition alleged that child's half-sibling, S.C., had previously been made a dependent of the court due to mother's substance abuse. Mother requested that child be placed with B.C. (hereinafter "great-grandmother"), who had custody of S.C. She also requested that great-grandmother temporarily take care of child until the social worker was able to approve placement with child's paternal grandparents. On June 27, 2013, the juvenile court ordered child to be detained and ordered paternity testing for R.R.

In the Department's jurisdiction report, the social worker indicated that mother had stated she was not ready to take care of another child and admitted she used drugs. Child had initially been placed into foster care. However, the Department was evaluating relative placement. The Department noted that placement would be explored with child's paternal grandparents first, with the second choice of placement being with mother's cousin, M.R. (cousin). Previously, mother had said she had been in a relationship with S.C.'s father from August to October 2012, but had also said she had been with child's presumed father, R.R., for over a year. Based on these timelines, the Department asserted it was "extremely important" for paternity to be established before making recommendations for services.

2

On October 28, 2013, the Department filed a disposition report. The report recommended the juvenile court sustain the section 300 petition and provide mother with reunification services. The report did not recommend services be provided to R.R., because paternity testing had revealed he was not the father. The report indicated child had been placed with cousin in July 2013. Cousin said she was willing and able to become child's legal guardian, or, if mother failed to reunify, to adopt child.

Also on October 28, 2013, the Department filed an addendum report recommending the court bypass services for mother. The report stated I.S. (grandmother) had requested placement of child, because she believed child and sibling, S.C., should be placed together.

In another report prepared by the Department, grandmother acknowledged she was not S.C.'s primary caregiver and had previously refused to be a placement option for S.C., but she had been helping great-grandmother take care of S.C. Grandmother expressed concerns over cousin's sister, who helped babysit child.

In another addendum report, the Department stated it was actively assessing grandmother as a placement option for child. Great-grandmother and grandmother were moving to a house in Modesto and the Department was arranging rental assistance for great-grandmother. Great-grandmother planned to live in the house with grandmother, grandmother's six-year-old son, grandmother's brother, and S.C. Mother, who had previously been in custody, had recently been released. However, she had not met with child since her release. In a separate report, the Department attached a minute order indicating that mother's parental rights to S.C. had been terminated.

On November 19, 2013, the Department filed a fifth addendum report. The report stated the Department had decided to deny grandmother's request to be approved as a placement option. Grandmother had previously been unable to take care of S.C. The report reiterated that it was important for child to have a stable and structured life and

3

noted it was ideal for child to be with his brother, S.C. However, the Department concluded that it was in child's best interest to remain under cousin's care.

That same day, the juvenile court held a disposition hearing. Mother was bypassed for reunification services. Child was ordered to have ongoing contact with S.C., and cousin became the educational rights holder for child. During the hearing, mother again stated that she wanted her children to be placed together. The juvenile court acknowledged mother's desire to have S.C. and child placed together but noted the Department had decided against placing both siblings together. The court remarked that both children would be placed with relatives, which greatly increased the likelihood the children would grow up together. The court adopted the visitation schedule outlined by the Department, which required reasonable sibling visitation as arranged by the caregivers and reasonable relative visitation. The court set the matter for a selection and implementation hearing under section 366.26.

The Department filed a section 366.26 report dated March 18, 2014. The report recommended terminating mother's parental rights so child could be freed for adoption. Child had remained in cousin's care, although he had gone on several overnight visits with grandmother, great-grandmother, and S.C. in Modesto. The Department recommended a permanent plan of adoption of child by cousin.

The Department also filed an addendum report dated the same day. The addendum report stated that grandmother had requested a grievance hearing after the Department denied her as a placement option for child. After the hearing, the California Department of Social Services rescinded the Department's prior decision denying grandmother's home approval. A social worker was scheduled to visit grandmother's home, and it was anticipated she would meet the standards for relative home approval. However, the Department was not planning on recommending placing child with

grandmother, because child was already residing with a relative and was doing well in his current placement.

On March 18, 2014, mother requested a trial on the section 366.26 hearing. A few days later, cousin filed a request to be granted de facto parent status, which was later granted.

On April 4, 2014, mother filed a section 388 petition seeking to change the court's order placing child with cousin. Mother noted the Department had assessed grandmother's home and had approved it for placement. She argued that immediate placement of child with grandmother would be better for child, because he would be assured a life-long connection with his older brother, S.C. The court ordered a hearing on the section 388 petition.

The Department filed another addendum report dated April 15, 2014. The report stated the Department had finished assessing grandmother's home and had approved it for placement. However, the Department was not recommending changing the placement order. Child had lived with cousin since he was less than a month old and had developed a close attachment and bond with cousin and cousin's children. Cousin was diligent in taking care of child's special needs, including his developmental delays, eczema, and asthma.

On April 15, 2014, the court held a hearing to consider the section 388 petition. The Department opposed the petition, arguing that mother had not established there was a changed circumstance or that changing the court's prior placement order would be in child's best interest. Ultimately, the court denied mother's request for an evidentiary hearing, concluding it would decide the matter based on argument. The court reasoned that there was no dispute that child was receiving "excellent care" and was "thriving" with cousin. Therefore, further testimony on the matter would "go more towards the philosophical and somewhat speculative issue of whether a placement change would be

5

best in the long term[,] but none of the evidence will show an immediate need to change the placement."

After a short recess, the court denied mother's section 388 petition, reasoning that there were no alleged facts that showed a "change in circumstances regarding [child] himself or his placement with [cousin]" and that the facts alleged did not sufficiently make a prima facie showing that it would be in child's best interest to change his placement. The court also ordered paternity testing for child.[2] Mother filed a notice of appeal following this hearing.

Approximately a month later, great-grandmother filed a section 388 petition on S.C.'s behalf seeking placement of child with grandmother.[3] The court denied this petition after finding great-grandmother had no standing to file a section 388 petition on behalf of S.C., who was represented by an attorney.

On June 9, 2014, grandmother also filed a section 388 petition seeking placement of child. She cited the Department's approval of her home as a changed circumstance warranting changing the juvenile court's prior placement order. The court denied grandmother's section 388 petition, finding it was substantially the same as mother's previously denied section 388 petition. That same day, great-grandmother filed a request to be designated as a prospective adoptive parent for child. The court denied this request and stated its reason for doing so was because she did not have custody of child.

Also on June 9, 2014, the court held the section 366.26 hearing. Mother was not present. Her attorney requested a continuance, which was denied. The court considered

---

[2] Paternity testing later established S.C. and child share the same father.

[3] Based on the wording of this petition, it is unclear whether the petition requested changing child's placement to be with grandmother or with great-grandmother.

the Department's reports and terminated mother's parental rights. Cousin was designated as the prospective adoptive parent. Mother appealed.[4]

## DISCUSSION

Mother argues the juvenile court erred when it denied her section 388 petition seeking to place child with grandmother.

### 1. *Mother's Standing*

As a threshold matter, the Department argues mother lacks standing to challenge the juvenile court's placement decision. Mother disagrees. She claims she has standing, because placing child with grandmother could have allowed her to pursue certain arguments to preserve her parental rights.

Dependency proceedings are subject to Code of Civil Procedure section 902, meaning that only "aggrieved parties" may appeal. (*In re Carissa G.* (1999) 76 Cal.App.4th 731, 734.) An "aggrieved person . . . is one whose rights or interests are injuriously affected by the decision in an immediate and substantial way, and not as a nominal or remote consequence of the decision." (*In re K.C.* (2011) 52 Cal.4th 231, 236 (*K.C.*).)

In *K.C.*, the California Supreme Court articulated the rule that "[a] parent's appeal from a judgment terminating parental rights confers standing to appeal an order concerning the dependent child's placement only if the placement order's reversal advances the parent's argument against terminating parental rights." (*K.C.*, *supra*, 52 Cal.4th at p. 238.)

_____

[4] Mother appeals the denial of her section 388 petition in case No. H040963. She appeals the termination of her parental rights in case No. H041312. On November 5, 2014, we ordered case Nos. H040963 and H041312 to be considered together for the purposes of briefing, oral argument, and disposition.

Mother acknowledges the rule set forth in *K.C.* and argues it is inapplicable. In *K.C.*, the father did not contend the denial of his placement request affected his parental rights. In contrast, mother strenuously argues placing child with grandmother would have affected her rights. First, mother points out that unlike grandmother, cousin is mother's third cousin and therefore not a "relative" as defined under section 361.3, subdivision (c)(2). Under section 366.26, subdivision (c)(1)(A), if the child is living with a relative who is unable or unwilling to adopt, but is "willing and capable of providing the child with a stable and permanent environment through legal guardianship, and the removal of the child from the custody of his or her relative would be detrimental to the emotional well-being of the child," the juvenile court will not terminate parental rights. By not granting the section 388 petition, mother claims the juvenile court effectively cut off any possibility of her seeking relief under section 366.26, subdivision (c)(1)(A). She further asserts that even if cousin were considered a relative, she had continually stated she was willing to adopt child, precluding mother from utilizing this exception to the termination of her parental rights.

Mother's situation is similar to those contemplated in *In re H.G.* (2006) 146 Cal.App.4th 1 (*H.G.*) and *In re Esperanza C.* (2008) 165 Cal.App.4th 1042 (*Esperanza C.*). In *H.G.*, the parents appealed an order removing their daughter from her grandparents' custody (§ 387) and an order terminating their parental rights. (*H.G.*, *supra*, at pp. 10-11.) The court noted that at the time of the section 387 hearing, the parents still had their parental rights and a placement decision under section 387 has the potential to alter the court's determination of the child's best interest and the appropriate permanency plan of the child. (*H.G.*, *supra*, at pp. 10-11.) Therefore, the parents had standing to appeal the placement decision. Similarly, in *Esperanza C.*, a mother sought to appeal the juvenile court's denial of her section 388 petition seeking to modify an existing placement order. (*Esperanza C.*, *supra*, at p. 1042.) Citing to *H.G.* and the

8

relative caregiver exception (§ 366.26, subd. (c)(1)(A)), the appellate court determined the mother had standing because "placement of a child with a relative has the potential to alter the juvenile court's determination of the child's best interests and the appropriate permanency plan for that child, and may affect a parent's interest in his or her legal status with respect to the child." (*Esperanza C.*, *supra*, at p. 1054.)

The juvenile court's decision not to change its prior order regarding placement has a direct affect on child's permanency plan. If, as mother surmises, the juvenile court had placed child with grandmother instead of cousin, mother may have been able to argue her parental rights should not be terminated under section 366.26, subdivision (c)(1)(A). Additionally, mother appealed the denial of her section 388 petition before her parental rights were terminated and "[w]e liberally construe the issue of standing and resolve doubts in favor of the right to appeal." (*Esperanza C.*, *supra*, 165 Cal.App.4th at p. 1053.) Therefore, we conclude mother has standing to appeal the denial of her section 388 petition.

2. *Denial of Mother's Section 388 Petition*

a. **Standard of review**

Section 388 permits any person having an interest in the child to petition for a hearing to change, modify, or set aside any court order previously made on grounds of change of circumstance or new evidence. (*In re Lesly G.* (2008) 162 Cal.App.4th 904, 912.) To prevail, the petitioner must demonstrate by a preponderance of the evidence that new or changed circumstances warrant a change in the prior order to promote the best interest of the child. (*In re S.J.* (2008) 167 Cal.App.4th 953, 959.) "We review the grant or denial of a petition for modification under section 388 for an abuse of discretion." (*In re B.D.* (2008) 159 Cal.App.4th 1218, 1228.) " ' "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has

9

no authority to substitute its decision for that of the trial court." ' " (*In re Stephanie M*. (1994) 7 Cal.4th 295, 318-319.)

### b. Statutory framework governing section 388 petitions

Section 388 provides, in pertinent part, as follows: "(a)(1) Any parent or other person having an interest in a child who is a dependent child of the juvenile court . . . may, upon grounds of change of circumstance or new evidence, petition the court . . . for a hearing to change, modify, or set aside any order of court previously made . . . . [¶] . . . [¶] (d) If it appears that the best interests of the child . . . may be promoted by the proposed change of order, . . . the court shall order that a hearing be held . . . ."

The procedural requirements for section 388 petitions are set forth in California Rules of Court,[5] rule 5.570. Per rule 5.570(a), "[a] petition for modification must be liberally construed in favor of its sufficiency." However, if the petition fails to state a change of circumstance or new evidence, the court may summarily deny it. (Rule 5.570(d).) Rule 5.570(f), provides: "If all parties stipulate to the requested modification, the court may order modification without a hearing. If there is no such stipulation and the petition has not been denied ex parte under section (d), the court must order that a hearing on the petition for modification be held within 30 calendar days after the petition is filed."

The petition to modify a prior order must include: (1) a showing of changed circumstances; and (2) the requested modification must be in the child's best interests. The burden is on the petitioning party to show both of these elements. (*In re Casey D*. (1999) 70 Cal.App.4th 38, 47.) In determining whether the section 388 petition makes the necessary showing, the court may consider the entire factual and procedural history of the case. (*In re Justice P*. (2004) 123 Cal.App.4th 181, 188-189.)

_____

[5] Subsequent unspecified rule references are to the California Rules of Court.

### c. Mother's section 388 petition

Mother argues the juvenile court erred when it determined she had not shown a change of circumstance, which she alleges was the Department's approval of grandmother's home for placement. She maintains the court applied an incorrect legal standard by requiring her to show *child's* circumstances had changed. She cites to a portion of the hearing where the court said mother had not alleged facts to show either that there was a change in circumstance regarding child himself or his placement with cousin.

Mother argues the court's statement in this regard amounts to legal error. We agree. "Nothing in section 388 suggests that the requisite change of circumstances must be a change applicable to the minors who are subject to the dependency. . . . The change of circumstances may be a change in the circumstances of a parent which may make the modification of a prior order appropriate. Indeed, this is precisely what happens in many section 388 petitions, where a parent avers that changes in his or her circumstances make reunification with a child possible and desirable. In these cases, there is usually no change in the circumstances of the minor, who remains in foster care." (*In re Daijah T.* (2000) 83 Cal.App.4th 666, 674.)

However, the trial court's erroneous conclusion in this regard does not warrant reversal of its order. The court did not deny mother's request solely on the basis that she failed to demonstrate a change in circumstances. The juvenile court concluded mother had also failed to meet her burden on the second element required for a section 388 petition, holding that she did not sufficiently demonstrate the proposed change would be in child's best interest. This was not an abuse of discretion.

"In any custody determination, a primary consideration in determining the child's best interests is the goal of assuring stability and continuity." (*In re Stephanie M.*, *supra*, 7 Cal.4th at p. 317.) "At a hearing on a motion for change of placement, the burden of

11

proof is on the moving party to show by a preponderance of the evidence that there is new evidence or that there are changed circumstances that make a change of placement in the best interests of the child." (*Ibid*.) "After the termination of reunification services, the parents' interest in the care, custody and companionship of the child are no longer paramount. Rather, at this point, 'the focus shifts to the needs of the child for permanency and stability' [citation], and in fact, there is a rebuttable presumption that continued foster care is in the best interests of the child. [Citation.] A court hearing a motion for change of placement at this stage of the proceedings must recognize this shift of focus in determining the ultimate question before it, that is, the best interests of the child." (*Ibid*.)

Mother opines that the dependency scheme has recognized a strong and compelling interest in developing relationships between siblings. She cites to several sections in the Welfare and Institutions Code that promote bonds between siblings (§§ 16002, subd. (a), 361.3, 362.1). While we agree that maintenance of a sibling bond with S.C. may benefit child, child's bond with his sibling was but one factor the court was entitled to consider when determining whether the proposed change would be in child's best interest.

In this case, the court received and considered the Department's reports, which did not recommend placing child with grandmother. Child was closely attached to cousin and had lived with cousin and her family since he was a newborn. Child was also bonded with cousin's other children. Additionally, cousin had continued to provide for child's special needs, including his developmental delays, need for physical therapy, eczema, and asthma. Although great-grandmother had custody of S.C. and was presently living with grandmother, cousin had maintained she was committed to ensuring ongoing sibling visits between child and S.C. and for family visits to continue.

12

Mother claims the court erred, because it made its determination based on speculation about child's long term needs and made a factual error when it stated that child had no cognitive knowledge of his brother. However, the burden is on *the petitioning party* to show that child would benefit from the changed placement. (*In re Casey D.*, *supra*, 70 Cal.App.4th at p. 47.)

Mother, as the petitioning party, did not provide evidence that child would benefit in the long term from placement with grandmother. Here, the only evidence presented by mother that a change in placement was in child's best interest was that child appeared to enjoy his visits with his brother. However, mother did not submit evidence on the bond between the two children. Mother also did not proffer any other facts to support her claims and did not provide any analysis regarding the comparative advantage between child living with grandmother versus his living with cousin. There was also no evidence assessing child's needs and discussing whether the benefits derived from placing child in grandmother's care would outweigh any negative impacts associated with moving him from cousin's home.

Mother also failed to provide evidence, aside from the Department's report that child enjoyed visits with S.C., that child had cognitive knowledge of S.C.'s existence or that child was bonded to him. Mother claims the court erred in only considering the short-term ramifications of a change in placement, but she herself did not provide evidence that the long term benefits may outweigh any negative impacts that may arise from removing child from cousin's care. Mother relied only on her own conclusory statements, which were insufficient.

Based on the foregoing, we do not find the juvenile court abused its discretion by determining mother had failed to meet her burden to show a change in placement would be in child's best interest.

### d. Heightened standard during the section 388 hearing

Mother contends the trial court erroneously required her to meet a heightened burden to show a "compelling need" to change placement, based on an errant statement made by the court during the hearing on the section 388 petition. This claim has no merit.

During the same hearing, the court articulated that mother had failed to sufficiently allege facts to even make a prima facie showing that child's placement should be changed, a standard that is far less than a "compelling need" standard and even less than the preponderance of the evidence standard that is used in deciding a section 388 petition. (See *In re Stephanie M.*, *supra*, 7 Cal.4th at p. 317 ["[a]t a hearing on a motion for change of placement, the burden of proof is on the moving party to show by a preponderance of the evidence that there is new evidence or that there are changed circumstances that make a change of placement in the best interests of the child."].)

At most, whether the court applied a heightened standard of review to mother's section 388 petition is unclear, and as a general rule " '[a] judgment or order of the lower court is *presumed correct*' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564) with "ambiguities . . . resolved in favor of affirmance" (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 631). Furthermore, even if we were to conclude the trial court misinterpreted the proper burden of proof, its conclusion that mother had failed to even make a prima facie showing renders the error harmless.

### e. The relative placement preference

In her reply brief, mother argues the juvenile court erred, because it never evaluated grandmother's home as a placement option at the disposition hearing. She claims grandmother was a relative, and the court should have considered the relative placement preference factors pursuant to section 361.3.

14

First, it is unclear whether mother properly preserved this issue for appellate review. Mother did not explicitly reference the relative placement preference during the hearing on the section 388 petition, although she mentioned "the law does provide for priority with respect to sanguinity or consanguinity in terms of the closeness of the relationship between relatives."[6] Additionally, mother does not specifically argue in her opening brief that the court failed to apply the relative placement preference. However, assuming without deciding that mother has not forfeited or waived her claim, we conclude it would still fail on the merits.

The record supports the court's determination that changing child's placement was not in his best interest. This conclusion is not undermined by an attempt to invoke the relative placement preference under section 361.3, which provides that a "relative seeking placement shall be the first placement to be considered and investigated." (§ 361.3, subd. (c)(1).) This preference " 'does not create an evidentiary presumption in favor of a relative, but merely places the relative at the head of the line when the court is determining which placement is in the child's best interests.' " (*Alicia B. v. Superior Court* (2004) 116 Cal.App.4th 856, 863.) In determining whether placement with a relative is appropriate, the court is required to consider multiple factors. However, "[t]he linchpin of a section 361.3 analysis is whether placement with a relative is in the best interests of the minor." (*Id.* at pp. 862-863.) Furthermore, preferential consideration is given to relatives only when "a new placement of the child must be made." (§ 361.3, subd. (d).)

Here, mother had already been bypassed for reunification services. Her interest in child's care, custody, and companionship are therefore no longer paramount. As a result, the juvenile court's focus appropriately shifted to " ' "the needs of the child for

---

[6] In response, the Department noted that mother was "bringing up the relative assessment standard under a disposition hearing."

permanency and stability." ' " (*K.C.*, *supra*, 52 Cal.4th at p. 236.) The relative placement preference does not provide a *preference* for relative placement. It provides preferential placement *consideration*, which in turn hinges on whether the placement would be in child's best interest. (*In re Stephanie M.*, *supra*, 7 Cal.4th at p. 321 ["regardless of the relative placement preference, the fundamental duty of the court is to assure the best interests of the child"].) The court determined, after a contested hearing, that it would not be in child's best interest to change his placement. This decision was not an abuse of discretion and is grounded with support in the record. Therefore, any error the court made in failing to consider the mandates of section 361.3 during the hearing was harmless.

### f. Full evidentiary hearing

Next, mother argues the juvenile court erred when it denied her request for a full evidentiary hearing. She claims the court should have allowed her to present additional evidence in support of her section 388 petition.

Section 388 does not specify the form or nature of a hearing that must be ordered by the juvenile court, or what type of evidence the court must receive. "[Rule] 5.570(h) governs the conduct of hearings on petitions for modification pursuant to section 388." (*In re E.S.* (2011) 196 Cal.App.4th 1329, 1339.) "The hearing must be conducted as a dispositional hearing under rules 5.690 and 5.696 if: [¶] (A) the request is for termination of court-ordered reunification services; or [¶] (B) There is a due process right to confront and cross-examine witnesses." (Rule 5.570(h)(2).) The rule provides that "proof may be by declaration and other documentary evidence, or by testimony, or both, at the discretion of the court." (*Ibid.*) Therefore, even though mother was entitled to a hearing, "the right to a hearing does not necessarily entitle [her] to a full evidentiary hearing." (*In re E.S.*, *supra*, at p. 1340.)

16

Mother claims the court erred in failing to order a full evidentiary hearing, because child's case involved disputed facts and credibility issues. Mother cites to *In re Matthew P.* (1999) 71 Cal.App.4th 841, where the reviewing court found the juvenile court abused its discretion when it declined to order a full hearing since the denial of the section 388 petition rested entirely on the social services reports, which the parents alleged were inaccurate. (*In re Matthew P.*, *supra*, at p. 851.)

*Matthew P.* is distinguishable. Mother does not allege the contents of the Department's reports are somehow inaccurate. The Department's report indicated child was attached to cousin, which mother did not dispute. Mother made no showing that removing child from his current home to grandmother's care would be in child's best interest or that child was suffering from his more limited contacts with S.C. She did not indicate the testimonies she sought to introduce would provide additional evidence to support her position, or that she wished to cross-examine the social worker. She merely stated she would like the social worker to testify about the statements she made in the reports, and would like the court to have the opportunity "to have that testimony" when making its decision on whether to grant the section 388 petition.

"[D]ue process is not synonymous with full-fledged cross-examination rights. [Citation.] Due process is a flexible concept which depends upon the circumstances and a balancing of various factors. [Citation.] The due process right to present evidence is limited to relevant evidence of significant probative value to the issue before the court." (*In re Jeanette V.* (1998) 68 Cal.App.4th 811, 817.) In light of the Department's reports, the attachments to the section 388 petition, and the petition itself, there was no showing of new or additional "evidence of significant probative value" to be presented through live testimony. (*In re Jeanette V.*, *supra*, at p. 817.) Therefore, it follows that mother was afforded an opportunity "to be heard in a meaningful manner," based solely on the

17

documentary evidence filed in support of and in opposition to her petition and the arguments presented by her counsel. (*In re James Q.* (2000) 81 Cal.App.4th 255, 265.)

Under these particular circumstances, we cannot say the juvenile court abused its discretion in denying the section 388 petition without ordering a full evidentiary hearing.

3. *The Order Terminating Mother's Parental Rights*

Mother's challenge to the order terminating her parental rights is limited to her argument that the court abused its discretion in denying her section 388 petition. Since we find the court did not abuse its discretion in denying the section 388 petition, we affirm the juvenile court's order terminating her parental rights.

**DISPOSITION**

The orders of the juvenile court denying mother's section 388 petition and terminating her parental rights are affirmed.

 

_____
Premo, J.


WE CONCUR:




_____
Rushing, P.J.




_____
Elia, J.